## UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**PARTS CLEANING TECHNOLOGIES
OF ILLINOIS, INC. and
PARTS CLEANING TECHNOLOGIES LLC,**

           Plaintiffs,                    Case No.
                                              Hon.

v.

**THOMAS LISOTA and
BENEFICIAL SOLVENTS AND ENVIRONMENTAL
SERVICES, LLC.**

           Defendants.

_____/

**TROWBRIDGE LAW FIRM, P.C.**
Charles E. Baker (P69935)
Harrison Galac (P76452) *admission pending*
Attorneys for Plaintiff
1380 East Jefferson Ave.
Detroit, MI 48207
(313) 259-6900
cbaker@trowbridgehouse.com

_____/

### VERIFIED COMPLAINT FOR
### INJUNCTIVE AND OTHER RELIEF

Plaintiffs Parts Cleaning Technologies of Illinois, Inc. ("PCTI") and Parts Cleaning

Technologies, LLC ("PCT"), allege as follows in support of their Complaint against Thomas

Lisota ("Lisota") and Beneficial Solvents and Environmental Services, LLC ("BSES") as follows:

### NATURE OF ACTION

1.      This action is based on Lisota's and BSES's willful and intentional interference

with the ownership rights and customers of PCTI, Lisota's breach of fiduciary duty, and his

misappropriation of trade secrets in violation of the Michigan Uniform Trade Secrets Act.

1

**PARTIES**

2.      PCTI is a Michigan corporation incorporated under the laws of the State of Michigan with its principal place of business in Redford, Michigan.

3.      PCT is a Michigan limited liability company under the laws of the State of Michigan with its principal place of business in Redford, Michigan. Ownership of the trademark described in this complaint is vested in PCT. PCTI is a licensee of the trademark.

4.      The sole owner/member of PCT is David Crandell, a Michigan resident and citizen. **Ex. A**, Affidavit of David Crandell ¶¶ 3-4.

5.      Lisota is a resident and citizen of the County of Houston, State of Minnesota.

6.      BSES is, on information and belief, a limited liability company organized and existing under the laws of the State of Minnesota and has as its principal place of business at 7350 Swede Bottom Rd., Houston, MN 55943.

7.      Lisota is the sole owner/member of BSES. **Ex B**, Email from Michael Murphy.

**JURISDICTION**

8.      Subject matter jurisdiction over the claims asserted in this Complaint is based upon: (i) 28 U.S.C. §§ 1331 and 1338(a) as an action arising under the Lanham Act, 15 U.S.C. §§ 1051 et. seq.; and (ii) 28 U.S.C. § 1332(a) as an action between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. Subject matter jurisdiction over those of Plaintiffs' claims that arise under state law is based upon the principles of supplemental jurisdiction set forth in 28 U.S.C. § 1367, and the provisions of 28 U.S.C. § 1338(b) as an action asserting a claim for unfair competition joined with a substantial and related claim under the trademark laws.

2

9.     Plaintiff further seeks immediate injunctive relief pursuant to Federal Rule of Civil Procedure 65(a).

10.     Venue properly lies in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action occurred within the Eastern District of Michigan, and Defendants have sufficient connection with this District to make venue proper.

11.     The Michigan long arm statute provides for limited personal jurisdiction over individuals and corporations if the action arises out of the transaction of "any business" within the state or the "doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." M.C.L. § 600.705 (individuals) & M.C.L. § 600.715 (corporations).

## GENERAL FACT ALLEGATIONS

### A. PCTI and PCT Background

12.     PCTI is a complete provider of cleaning systems for the metal cleaning market. PCTI provides chemistry for customers and designs machinery for the customer's use. It offers cleaning processes for immersion, spray in air, ultrasonic and vapor degreasing equipment as well as hazardous waste & environmental services, on-site equipment cleanouts, and contract cleaning. It offers these goods and services to customers in Illinois, Iowa, Minnesota, Indiana, and Wisconsin.

13.     For more than 10 years, PCTI has used the trademark "Techtride®" (the "Techtride Mark") to identify some of its goods.

14.     PCT owns federal trademark Registration No. 2,832,840 issued by the U.S. Patent and Trademark Office on April 13, 2004, for the Techtride Mark. A true and correct copy of the registration is attached as **Exhibit C**.

3

15.     PCTI has spent significant sums promoting its goods bearing the Techtride Mark, and the popularity of the Techtride Mark has contributed greatly to PCTI's branding efforts.

16.     As a result of PCTI's extensive use of the Techtride Mark, PCTI has built and now owns enormously valuable goodwill symbolized by the Techtride Mark.

17.     PCTI has developed common law rights in the Techtride Mark through its extensive use thereof. PCTI has also secured a federal trademark registration to protect the Techtride Mark.

18.     The foregoing registration is valid, subsisting, and in full force and effect.

**B.  Lisota Background**

19.     In July 2002, Lisota began his employment with PCTI as a Branch Manager. **Ex. A**, ¶ 5.

20.     Lisota worked in PCTI's Chicago office. **Ex. A**, ¶ 6.

21.     As a Branch Manager, Lisota was responsible for managing customer relationships in Illinois, Iowa, Minnesota, Indiana, and Wisconsin, meeting with customers and potential customers to solicit their business, selling customized products, and training customers and employees on the capabilities and use of PCTI's products. **Ex. A**, ¶ 7.

22.     Lisota also was responsible for ordering products and maintaining relationships with vendors. **Ex. A**, ¶ 8.

23.     Lisota was accountable for growing new and existing business by prospecting organizations and closing deals. **Ex. A**, ¶ 9.

24.     As a Branch Manager, Lisota was in charge of a $2,000,000.00 book of business. **Ex. A**, ¶ 10.

25.     Portions of the book of business was purchased by PCTI and related entities from Detrex in 2002. **Ex. A**, ¶ 11.

4

26.     Through his position of trust with PCTI, Lisota had access to, was trained upon, and had intimate knowledge of: PCTI's product offerings; access to the formulation of additives; product strengths and weaknesses in comparison to competitors' offerings; customer pricing, budgets, and margins; customers' needs; the terms of customer contracts; training for customers; customer contact and personnel information; prospective customer information; marketing strategies; sales plans; sales forecasts; referral-source information; access to valuable reporting and product delivery data; and prospective customer pipeline information and plans. **Ex. A**, ¶ 12.

27.     PCTI took reasonable measures to protect the proprietary and confidential data of its customers, including financial information. PCTI strictly limits such access to certain personnel on a need-to know basis. **Ex. A**, ¶ 13.

**C.  Lisota's Scheme to Undermine PCTI**

28.     On August 26, 2010, Lisota organized BSES with the State of Minnesota. **Ex D**, Articles of Organization.

29.     In or about August 2014, Crandell saw drums bearing the name of BSES at PCT's client, DAPCO Industries. **Ex. A**, ¶¶ 14-15 and **Ex. E**.

30.     Crandell saw similar barrels at other locations as well including, but not limited to, Senior Flexonics, Casting Impregnators, Clybourn Metal Finishing. **Ex. A**, ¶ 16.

31.     In or about September 2014 and while still employed by PCTI, Lisota met with David Crandell from PCTI. **Ex. A**, ¶ 17.

32.     At the aforementioned meeting Lisota admitted that he and/or BSES had been servicing and selling products to approximately 40 of PCTI's customers and that Lisota and/or BSES had generated $650,000.00 in revenue in 2014. **Ex. A**, ¶ 18.

33.     Lisota admitted to Crandell that Lisota and/or BSES would acquire and then sell PCTI products to PCTI's clients, including product bearing the Techtride Mark. **Ex. A**, ¶ 19.

34.     Lisota's sale of goods bearing the Techtride mark extended to multiple customers. **Ex. A**, ¶ 20, **Ex. F**, Packaging Slip from BSES to Senior Flexonics, and **Ex. G,** Email Contact from Union Special.

35.     Lisota further admitted to Crandell that Lisota and/or BSES would buy product from PCTI's suppliers and would sell them to PCTI's clients. **Ex. A**, ¶¶ 19-22, **Ex. H**, Email thread between Lisota and Terri Blankenship.

36.     Crandell later learned that Lisota had engaged in an elaborate scheme to undermine PCTI's business and that Lisota had used PCTI's proprietary information for his own pecuniary advantage. **Ex. A**, ¶ 21 and **Ex. I**, Clients from PCTI that are/were serviced by Lisota and/or BSES.

37.     Lisota admitted to Crandell that he was selling goods to PCTI's client, while he was PCTI's employee, by using PCTI labels and then applying BSES labels to the product. **Ex. A**, ¶ 22.

38.     Moreover, Lisota contacted one of PCTI's major customers that was in need of chemicals and Lisota and/or BSES would purchase product from PCTI's supplier, apply a label with the Techtride Mark, sell it to PCTI's customer, and retain the profit. **Ex. F**, Packaging Slip from BSES to Senior Flexonics.

39.     In or about May 2014, Lisota further approached one of PCTI's clients that received chemical waste removal service from PCTI and took that business from PCTI. The annual gross revenue from that business is approximately $300,000.00. **Ex. A**, ¶ 23.

40.     In May 2014 Lisota approached an employee of an entity related to PCT and PCTI in an attempt to further his scheme into another region of sales. **Ex. J**, **Affidavit of Derrick Fatzinger ¶¶** 5-7.

### D.  Lisota's Employment Ceases

41.     On October 3, 2014, Lisota's employment with PCTI ceased. **Ex. A**, ¶ 24.

42.     Lisota's refusal or failure to return PCTI's confidential, proprietary, and trade secret information has impaired PCTI's customer goodwill and competitive edge.

43.     Counsel for PCTI and PCT sent a cease and desist letter to Lisota and BSES through their counsel in Minnesota. **Ex K**, Cease and Desist Letter and **Ex L**, Proof of Delivery.

44.     His breach of fiduciary duty in interfering with PCTI's relationships with its customers (while he was employed with PCTI) and his plan to use PCTI's confidential, proprietary, and trade-secret information in order to build a business for BSES will irreparably harm PCTI if temporary, preliminary, and permanent injunctive relief is not granted.

45.     Indeed to date PCTI has lost a list of client's to Lisota and/or BSES. **Ex. A**, ¶ 21 and **Ex. I.**

### COUNT I
### INJUNCTIVE RELIEF

46.     PCTI and PCT repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

47.     By virtue of the verified allegations and facts set forth herein, PCTI and PCT have demonstrated a reasonable likelihood of success on the merits and that a balancing of the equities favors the issuance of an injunction against Lisota and BSES.

48.     Unless Lisota and BSES are temporarily, preliminarily, and/or permanently enjoined from the foregoing misconduct, PCTI and PCT will be irreparably harmed by:

a.  Lisota's refusal or failure to return PCTI and PCT's confidential and proprietary trade secrets, which is solely the property of PCTI and PCT;

b.  Lisota's continued misappropriation of PCTI and PCT's confidential, proprietary, and trade-secret information for the purpose of raiding PCTI and PCT's customers;

c.  Loss of customers, prospective customers, customer goodwill, competitive advantage, and market position as Lisota and BSES exploit PCTI and PCT's customer information and other proprietary information, which Lisota and BSES have wrongfully converted;

d.  Lisota's potential spoliation of evidence and deletion of files in an effort to hide his unlawful conduct;

e.  Present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable;

f.  Lisota and/or BSES's sale of goods bearing the Techtride Mark; and

g.  No adequate remedy at law.

**COUNT II**
**TRADEMARK INFRINGEMENT, 15 U.S.C. § 1114**

49.  PCTI and PCT repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

50.  The United States Patent and Trademark Office has granted a federal trademark registration to the Techtride Mark. Copies of certain of these registrations are attached hereto as **Exhibit C**. PCT owns the exclusive trademark rights and privileges in and to the Techtride Mark in the United States. PCT licenses its trademark rights in the Techtride Mark to PCTI, which uses the Techtride Mark as a designation of source and quality for its goods and services. PCTI uses the registration symbol "®" on its goods and in advertising associated with the Techtride Mark.

8

51.     Lisota and/or BSES's distribution, marketing, promotion, offering for sale, and sale of goods that bear the Techtride Mark is likely to cause confusion, mistake, or deception as to the source, affiliation, sponsorship, or authenticity of Lisota and/or BSES's goods. As a result of Lisota and/or BSES's unauthorized use of the trademark that is identical to and/or confusingly similar to PCT's federally registered mark, the public is likely to believe that Lisota and/or BSES's goods have been manufactured, approved by, or are affiliated with PCT. Consequently, PCT's ability to gain revenue through the sale of goods bearing Techtride Mark is limited.

52.     PCTI and PCT have no adequate remedy at law for Lisota and/or BSES's infringement of the Techtride Mark, in that: (i) the Techtride Mark is unique and valuable property, injury to which cannot adequately be compensated by monetary damages; (ii) the damages to Plaintiffs resulting from the infringement are not precisely and fully ascertainable; (iii) the infringement injures and threatens to continue to injure PCTI and PCT's reputation and goodwill; and (iv) the damage resulting to PCTI and PCT from Lisota and/or BSES's wrongful conduct, and the conduct itself, are continuing, and PCTI and PCT would be required to bring a multiplicity of suits to achieve full redress for the injuries caused thereby.

53.     Unless restrained, Lisota and/or BSES's infringement of the Techtride Mark will continue to cause irreparable injury to PCTI and PCT, both during the pendency of this action and thereafter. PCTI and PCT are therefore entitled to an order from this Court preliminarily and permanently enjoining Lisota and BSES and their agents, employees and others acting in concert with them, from directly or indirectly infringing the Techtride Mark in any manner, including by using any name, mark, design or logo that is confusingly similar to the Techtride Mark in connection with the sale, offer for sale, advertising, or promotion of any goods or services.

54.     PCTI and PCT are further entitled to recover damages sustained in consequence of defendant's wrongful conduct, in an amount to be determined; to recover Lisota and/or BSES's profits; and to recover PCTI and PCT's attorney fees and other costs herein. Based upon the circumstances of the case, including the willful nature of Lisota and/or BSES's conduct. PCTI and PCT are further entitled to recover treble the amount found as actual damages pursuant to 15 U.S.C. § 1117.

### COUNT III
### <u>UNFAIR COMPETITION</u>

55.     PCTI and PCT repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

56.     The foregoing conduct of Lisota and/or BSES constitutes an unfair method of competition, including, but not limited to, Lisota and/or BSES's use of the Techtride Mark.

57.     As a consequence of the foregoing, PCTI and PCT have suffered and will continue to suffer financial loss.

### COUNT IV
### <u>MICHIGAN UNIFORM TRADE SECRETS ACT, M.C.L. § 445.1901, ET SEQ.</u>

58.     PCTI and PCT repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

59.     The confidential information misappropriated by Lisota and/or BSES constitutes trade secrets within the meaning of the Michigan Uniform Trade Secrets Act, M.C.L. § 445.1901 et seq. ("MUTSA") because it derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

60.    PCTI and PCT took reasonable measures to keep their trade secrets confidential.

61.    As stated above, only certain individuals had access to the trade secrets. Trade secret information was provided only to those like Lisota, who held positions of trust with PCTI and PCT.

62.    PCTI and PCT spent considerable sums of money acquiring, maintaining, and guarding this information.

63.    Lisota has willfully and maliciously misappropriated the trade secrets to fulfill his plan of systematically raiding PCTI and PCT's clients.

64.    Lisota has misappropriated PCTI and PCT's trade secrets by acquiring them through improper means, including conversion and his breach of fiduciary duty to maintain its secrecy.

65.    Lisota and/or BSES are now disclosing and/or using these trade secrets without consent.

66.    There is a substantial threat that Lisota and/or BSES will continue to use and disclose the trade secrets in his employment/operation of BSES.

67.    Lisota's misappropriation of the trade secrets and use of them to solicit and induce PCTI and PCT's customers to transfer their business to Lisota and/or BSES has caused PCTI and PCT to sustain actual loss, including, but not limited to, lost profits and damage to good will and reputation.

68.    As a direct and proximate result of Lisota's wrongful conduct, PCTI and PCT has suffered and will continue to suffer irreparable damage and money damages unless enjoined.

69.    Because Lisota's misappropriation was willful and malicious, PCTI and PCT also is entitled to the recovery of punitive damages and PCTI and PCT's attorneys' fees.

11

## COUNT V
## TORTIOUS INTERFERENCE WITH
## BUSINESS AND CONTRACTUAL RELATIONSHIPS

70.     PCT and PCTI repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

71.     Economic relationships exist and remain an essential element to the relationship between PCT and PCTI and their customers and prospective customers.

72.     PCT and PCTI also has contractual relationships with their customers.

73.     Lisota has knowledge of these contractual relationships and economic business relationships that PCT and PCTI have with their customers because of his positon as a Branch Manager.

74.     Lisota and/or BSES have wrongfully interfered with PCT and PCTI's prospective economic advantage, existing business relationships, and/or contractual relationships with their customers by wrongfully obtaining, converting, and then using PCT and PCTI's trade secrets and proprietary information.

75.     Lisota and/or BSES have further wrongfully interfered with PCT and PCTI's prospective economic advantage, existing business relationships, and/or contractual relationships through his breach of fiduciary duty.

76.     Specifically, Lisota and/or BSES have interfered with these relationships by inducing at least one customer to terminate its relationship with PCT and PCTI while he was employed by PCT and PCTI.

77.     Lisota and/or BSES have engaged in these acts with full knowledge and/or recklessness and want of ordinary care in that such acts would necessarily interfere with or disrupt the economic relationships that PCT and PCTI enjoys with their customers.  Lisota and/or BSES's

conduct is intentional and willful in that they intend to harm PCT and PCTI's economic and financial interest.

78.     Lisota and/or BSES's conduct is wrongful and not justified, privileged, or excusable.

79.     As a direct and proximate result of Lisota and/or BSES's wrongful conduct, PCT and PCTI have suffered and will continue to suffer irreparable harm, as well as monetary damages insufficient to fully remedy PCT and PCTI.

**COUNT VI**
**COMMON LAW CONVERSION**

80.     PCT and PCTI repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

81.     The foregoing conduct of Lisota and/or BSES constitutes a conversion of PCT and PCTI's proprietary and confidential business information, PCT and PCTI's property, and PCT and PCTI's proprietary rights and interests.

82.     As a result of Lisota and BSES's unlawful conversion, PCT and PCTI have suffered and/or will continue to suffer irreparable loss, including damage to business reputation, advantage, and good will and other damages.

83.     Unless Lisota and BSES are restrained and enjoined from converting property of PCT and PCTI, PCT and PCTI will continue to suffer immediate and irreparable injury and harm for which there is no adequate remedy at law.

**COUNT VII**
**STATUTORY CONVERSION IN VIOLATION OF M.C.L. § 600.2919a**

84.     PCT and PCTI repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

13

85.     Through the foregoing conduct, Lisota and/or BSES have intentionally converted PCT and PCTI's proprietary and confidential business information, property, and proprietary rights and interests to their own use.

86.     As a result of Lisota and BSES's unlawful conversion, PCT and PCTI have suffered and/or will continue to suffer irreparable loss, including damage to business reputation and good will and other damages and has expended time and resources in attempting to recover their proprietary and confidential business information, property, and proprietary rights and interests.

87.     Unless Lisota and BSES are restrained and enjoined from converting the property of PCT and PCTI, PCT and PCTI will continue to suffer immediate and irreparable injury and harm for which there is no adequate remedy at law.

### COUNT VIII
### BREACH OF FIDUCIARY DUTY

88.     PCT and PCTI repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

89.     Lisota owed a fiduciary duty of loyalty to PCT and PCTI during and after his employment.

90.     Lisota breached his fiduciary duty to PCT and PCTI during his employment with PCT and PCTI by, among other things: converting financial, business, and customer information; continuing to use PCT and PCTI's confidential information wrongfully acquired by Lisota; and soliciting one or more of PCT and PCTI's customers to follow him upon his departure from PCT and PCTI and cancel their business relationship with PCT and PCTI.

91.     Lisota's breach of this duty has proximately caused PCT and PCTI to sustain damages, including, but not limited to, lost profits, revenues, and damage to good will.

14

## COUNT IX
## UNJUST ENRICHMENT

92.     PCT and PCTI repeat and incorporate the allegations set forth in the preceding paragraphs as if fully set forth herein.

93.     By wrongfully acquiring PCT and PCTI's confidential, proprietary, and trade secret information and by misappropriating it to his own use, Lisota and BSES have unjustly received a benefit from PCT and PCTI.

94.     Under the circumstances of the case, it would be inequitable for Lisota and BSES to accept or retain the benefit conferred on them by PCT and PCTI without paying PCT and PCTI the value of the benefit conferred.

95.     PCT and PCTI is entitled to receive the benefit conferred on Lisota and BSES and entitled to any profits or other remuneration received by Lisota (or any person to whom he discloses such information) from the use of PCT and PCTI's confidential, proprietary, and trade-secret information.

## REQUEST FOR RELIEF

WHEREFORE, PCT and PCTI respectfully requests judgment in its favor and against Lisota and BSES, and respectfully requests that the Court:

(1) Issue the temporary restraining order and preliminary injunctive relief;

(2) Issue a permanent injunction:

(a) Enjoining and restraining Lisota, his agents, employees, BSES, and others acting in concert with them, from directly or indirectly making any further commercial use of the Techtride Mark or any other names, marks or logos that are substantially similar to the Techtride Mark.

(b) Enjoining and restraining Lisota, for a period of one (1) year from the date of the injunction, for himself or on behalf of or in conjunction with any other person, partnership, corporation or association (including, but not limited to, BSES), from directly or indirectly, soliciting or servicing any customers of PCT and PCTI with whom he worked while employed by PCTI;

(c) Enjoining and restraining Lisota, for a period of one (1) year from the date of the injunction, for himself or on behalf of or in conjunction with any other person, partnership, corporation or association (including, but not limited to, BSES), from directly or indirectly, soliciting or servicing any prospective customers of PCTI and PCT about whom he acquired confidential knowledge during his employment with PCTI;

(d) Enjoining and restraining Lisota from, directly or indirectly, whether alone or in concert with others, including any agent of Lisota and/or BSES, from using or disclosing PCTI and PCT's confidential, proprietary, and trade-secret information;

(e) Requiring Lisota to produce for a forensic inspection and analysis all of his computer equipment, including, but not limited to, laptop and desktop computers, USB devices, external storage devices, and iPhones, and any online based e-mail accounts and cloud-based storage accounts and drop-boxes used by Lisota;

(f) Requiring Lisota to return to PCT and PCTI, all documents, data, files, and information obtained from PCT and PCTI; and

(g) Requiring Lisota to preserve all evidence, in hard copy and electronic form, related to the allegations in this case.

16

(3) Award PCT and PCTI all of its direct and consequential damages against Lisota, including, but not limited to: damages for trademark infringement, damages for unfair competition, damages on account of lost profits and revenues, damages to good will, disgorgement of amounts received by Lisota and/or BSES, the compensation paid to Lisota while he was breaching his fiduciary duty, interest, attorneys' fees and costs, and the fees of the computer forensic expert incurred as a result of Lisota's wrongful conduct;

(4) Award PCT and PCTI treble damages for conversion for Lisota and/or BSES's violation of M.C.L. § 600.2919a;

(5) Award PCT and PCTI double the damages they prove at trial, together with their attorneys' fees, as provided in the Michigan Uniform Trade Secrets Act; and

(6) Award PCT and PCTI such other and further relief as the Court deems just and proper.

Respectfully submitted,
**TROWBRIDGE LAW FIRM, P.C.**

s/ Charles E. Baker P69935
Charles E. Baker (P69935)
Harrison Galac (P76452) *admission pending*
Attorneys for Plaintiffs
1380 East Jefferson Ave.
Detroit, MI 48207
(313) 259-6900
cbaker@trowbridgehouse.com

Dated: February 18, 2015

## VERIFICATION

Under penalty of perjury under the laws of the United States of America and the State of Michigan, I declare that I have read the foregoing, and that the facts alleged therein are true and correct to the best of my knowledge and belief. I understand that a false statement in this Verification will subject me to penalties of perjury.

_David Crandell_
David Crandell, President
Parts Cleaning Technologies of Illinois, Inc. and Parts Cleaning Technologies, LLC

Dated this **19** day of February, 2015.